SPECIAL,SUSPENSE

## United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:13-cv-05775-PD

| | |
|---|---|
| CURRY et al v. DEPUY ORTHOPEDICS, INC. et al | Date Filed: 10/02/2013 |
| Assigned to: HONORABLE PAUL S. DIAMOND | Date Terminated: 10/07/2013 |
| Cause: 28:1332 Diversity-Product Liability | Jury Demand: Plaintiff |
| | Nature of Suit: 365 P.I.: Personal Inj. Prod. Liability |
| | Jurisdiction: Diversity |

**Plaintiff**

**CYNTHIA CURRY**                represented by     **GERALD B. BALDINO , JR.**
SACCHETTA & BALDINO
308 E. SECOND ST
MEDIA, PA 19063
610-891-9212
Email: jerry@sbattorney.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHRIS CURRY**                represented by     **GERALD B. BALDINO , JR.**
*W/H*                                            (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DEPUY ORTHOPEDICS, INC.**

**Defendant**

**JOHNSON & JOHNSON**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2013 | 1 | COMPLAINT against DEPUY ORTHOPEDICS, INC., JOHNSON & JOHNSON ( Filing fee $ 400 receipt number 089280.), filed by CYNTHIA CURRY, CHRIS CURRY.(jwl, ) (Entered: 10/02/2013) |
| 10/02/2013 | | Summons Issued as to DEPUY ORTHOPEDICS, INC., JOHNSON & JOHNSON. Two Forwarded To: Counsel on 10/2/13 (jwl, ) (Entered: 10/02/2013) |
| 10/02/2013 | | DEMAND for Trial by Jury by CHRIS CURRY, CYNTHIA CURRY. (jwl, ) |

| | | |
|---|---|---|
| | | (Entered: 10/02/2013) |
| 10/07/2013 | 2 | ORDER THAT THE CLERK OF COURT MARK THIS ACTION CLOSED FOR STATISTICAL PURPOSES AND PLACE THE MATTER IN THE CIVIL SUSPENSE FILE.. SIGNED BY HONORABLE PAUL S. DIAMOND ON 10/4/2013. 10/7/2013 ENTERED AND COPIES MAILED TO UNREPS, E-MAILED.(kp, ) (Entered: 10/07/2013) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 10/14/2013 09:41:21 | | | |
| PACER Login: | te0441 | Client Code: | 12194-04159/lme |
| Description: | Docket Report | Search Criteria: | 2:13-cv-05775-PD |
| Billable Pages: | 2 | Cost: | 0.20 |



SACCHETTA & BALDINO
BY: GERALD B. BALDINO, JR., ESQUIRE          Attorney for Plaintiff
I.D. No. 55624
308 East Second Street
Media, PA 19063
(610) 891-9212

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CYNTHIA CURRY and CHRIS CURRY, W/H     :
12 Elmwood Avenue                      :
Norwood, PA 19074                      :          13     5775
                    Plaintiff         :
v.                                     :
                                       :
DEPUY ORTHOPEDICS, INC.                :
700 Orthopedic Drive                   :
Warsaw, IN 46582                       :
and                                    :          FILED OCT 02 2013
JOHNSON & JOHNSON                      :
1 Johnson & Johnson Plaza              :
New Brunswick, NJ 08933                :
                    Defendant         :          JURY TRIAL DEMANDED

COMPLAINT

AND NOW, come the plaintiffs, by and through their undersigned counsel, and aver the

following:

Statement of Jurisdiction
Diversity

1.     The plaintiffs are citizens of Pennsylvania.  Defendant Depuy Orthopedics, Inc. is a

corporation incorporated under the laws of Indiana with its principal place of business in

Indiana.  Defendant Johnson & Johnson is a corporation organized under the laws of the State of

New Jersey with its principal place of business in New Jersey.  The amount in controversy,

without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

Parties

2.    Plaintiffs, Cynthia Curry and Chris Curry, wife and husband, are adult individuals residing at 12 Elmwood Avenue, Norwood, Pennsylvania.

3.    Defendant Depuy Orthopedics, Inc. is an incorporated entity with its principal place of business located at 700 Orthopedic Drive, Warsaw, Indiana.

4.    Defendant Johnson & Johnson is, upon information and belief, an incorporated entity with its principal place of business located at 1 Johnson & Johnson Plaza, New Brunswick, New Jersey.

5.    Defendant Depuy Orthopedics, Inc. is a subsidiary of defendant Johnson & Johnson.

Facts

6.    At all times material hereto, defendants, Johnson & Johnson and Depuy Orthopedics, Inc., were engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing or introducing into the stream of commerce, either directly or indirectly, orthopedic products, specifically including the Depuy ASR acetabular system, and were involved in monitoring and reporting adverse effects, and made decisions regarding the response of defendants to those adverse effects.

7.    At all times material hereto, each of the defendants was a representative, agent and/or partner of the other defendant and was acting in a manner such that the acts of one defendant are attributable to the other defendant.

8.    The ASR device consists of three components: (a) the femoral stem which is inserted into the femur, (2) the femoral head (ball), and (3) the acetabular cup (socket).

2

9. The ASR is a metal-on-metal device with the ball rotating within a metal acetabular cup.

10. The defendants submitted §510(k) pre-market notification and obtained marketing approval for the ASR from the FDA under §510(k) of the Act. 21 U.S.C. §360 *et seq.*

11. Since 2003, the defendants have made various §510(k) pre-market approval submissions to the FDA intended to demonstrate that the ASR devices are substantially equivalent in safety and effectivity to an FDA-approved device.

12. On or about March 9, 2004, the defendants submitted a §510(k) pre-market notification of intent to request approval for the ASR. *See* FDA 510(k) No. K040627.

13. On or about August 5, 2005, defendants received §510(k) approval for the ASR from the FDA.

14. The §510(k) approval process is regarded as a simplified application process that does not require as extensive a review and approval by the FDA as alternative application processes, because the entity applying for FDA approval submits that the device to be marketed is substantially equivalent to a legally marketed device.

15. No clinical trials were conducted in connection with the submission of the ASR application process.

16. The defendants asserted that "the subject device does not raise any new issues of safety or effectiveness."

17. The defendants promoted the ASR as a device that had several advantages over other hip replacement systems.

18. The defendants advertised that the ASR was superior to the competition, in that the ASR was the device of choice for those wanting to be physically active and for those wanting

3

a high performance hip replacement, and that the system had a strong clinical history and was less prone to wear.

19.    Contrary to the defendants' representations, the ASR was/is prone to premature failure and unacceptably high failure rates when compared with other metal-on-metal prostheses and causes severe injuries to patients due to metal debris that is released in the patient.

20.    The ASR produces large amounts of metal debris as the metal components wear and the metal debris causes damage to muscles, tendons and other soft tissue.  The defects also interfere with the intended bone growth and result in high levels of metal in the patients' blood.

21.    ASR devices have a significantly higher failure rate than they should, due to the defects which concentrate the forces in a manner to lead to premature wear, loosening of the prosthesis and metal release.

22.    As a result of the defective ASR, patients with ASR hips suffer severe injuries, which include the need for a revision to remove the ASR hip, along with other serious injuries as set forth herein.

23.    The defendants failed to adequately test the ASR design before marketing the product.

24.    The defendants knew or should have known that the ASR device was defective, unsafe and not suitable for its intended purpose.

25.    The defendants knew or should have known prior to the August 24, 2010 recall that the ASR was defective and should not be used inside of patients.

26.    Between 2006 and 2009, reports of problems associated with the ASR device rose sharply and there was information from Europe and Australia, where the defendants had been selling the ASR device, that the failure rates were unacceptably high.

4

27.     Additionally, in early March 2010, the defendants issued a warning to surgeons in the United States that the ASR device had a higher than expected failure rate. This letter to surgeons in the United States came nearly three months after the defendants voluntarily withdrew the ASR device from the Australian market in December 2009. Even so, the defendants continued to market, promote and sell the ASR device in the United States for about six months, until the U.S. recall on August 24, 2010.

28.     At all times material hereto, the defendants had knowledge that the ASR devices had a higher than acceptable failure rate and were not safe and that the ASR was in fact enhancing and causing injuries. Even so, the defendants refused to concede the product was defective and delayed recalling the ASR device such that the ASR devices continued to be used in hip replacement surgeries.

29.     On or about October 8, 2009, plaintiff Cynthia Curry underwent right hip replacement surgery, performed at Crozer Chester Medical Center by orthopedic surgeon James M. Zurbach, M.D., during which the Depuy ASR hip was placed.

30.     Failure of the ASR device resulted in the need for revision surgery, which was performed on June 28, 2013, at Crozer Chester Medical Center by orthopedic surgeon James M. Zurbach, M.D.

31.     The defective ASR device and the conduct of defendants was the legal cause of serious injury to the plaintiff, which included:

a.      undergoing a surgical procedure which would not have been necessary had the ASR not been defective,

b.      undergoing a revision surgery which was more complicated, more invasive and less successful than it would have been had the ASR not been defective,

5

c.    metal poisoning and metalosis due to metal debris from the defective ASR,

d.    lost wages and earning capacity,

e.    medical expenses, past and future,

f.    extreme pain, suffering, scarring, disfigurement and embarrassment, aggravation, inconvenience, humiliation and loss of enjoyment of life's pleasures,

g.    being placed at increased risk for future medical complications.

32.    Plaintiff neither knew nor could have known before the date of recall that the ASR device was defective, and neither knew nor could have known of the damages and harm suffered until shortly before the June 28, 2013, revision surgery.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, for compensatory damages, costs of suit and all other damages recoverable by law.

## COUNT I
### Cynthia Curry v. Defendants
### Strict Liability

33.    Plaintiff incorporates herein all preceding paragraphs of this Complaint as though fully set forth at length.

34.    The defendants are the manufacturer, designer, distributor, seller and/or supplier of the ASR devices, including the one supplied to the plaintiff, Cynthia Curry.

35.    When the ASR device was implanted in plaintiff Cythia Curry, it was unchanged from its condition when it was placed into the stream of commerce by the defendants.

36.    The ASR was and is unsafe for normal and reasonably anticipated use.

37.    The ASR was used in the manner for which it was intended and in a reasonably foreseeable manner.

6

38.    The ASR was defective and was more dangerous than an ordinary consumer would expect.

39.    The ASR was defective in its design and/or manufacture and by virtue of the defendants' failure to warn of the dangers and risks associated with the product.

40.    The ASR did not conform to the representations made by defendants.

41.    Defendants failed to warn before implantation of the ASR risks known to the defendants at that time.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, for compensatory damages, costs of suit and all other damages recoverable by law.

## COUNT II
### Cythia Curry v. Defendants
### Negligence

42.    Plaintiff incorporates herein all preceding paragraphs of this Complaint as though fully set forth at length.

43.    The defendants had a duty to use reasonable care in the design, manufacture, construction, formulation, preparation, assembly, testing, marketing, selling, advertising, packaging, labeling and warning about the ASR device.

44.    Defendants had a duty to plaintiff since plaintiff has an ASR device implanted.

45.    Defendants negligently designed, manufactured, constructed, formulated, prepared, assembled, tested, marketed, sold, advertised, packaged, labeled and warned about the ASR device.

46.    The ASR is adulterated and/or misbranded.

47.    Plaintiff is within the class of persons who are designed to be protected by the Act and regulations promulgated pursuant to it by the FDA and plaintiff's injuries are the type of

harm these statutes and regulations are designed to prevent. The defendants, therefore, are negligent *per se.*

48.    Defendants' representations to plaintiff regarding the safety and efficacy of the ASR device were false and misleading and plaintiff relied upon said representations to her detriment.

WHEREFORE, plaintiff demands judgment against defendants, jointly and severally, for compensatory damages, costs of suit and all other damages recoverable by law.

COUNT III
Cynthia Curry v. Defendants
Fraudulent Misrepresentation

49.    Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as though fully set forth at length.

50.    Defendants made fraudulent misrepresentations with respect to the ASR in the following particulars:

a.    defendants represented through the labeling, advertising, marketing materials, detail persons, similar presentations, publications, notice letters and regulatory submissions that the ASR had been tested and found to be safe and effective for the treatment of pain and inflammation; and

b.    defendants represented that the ASR was safer than other alternative hip devices.

51.    Defendants knew that their representations were false, yet they willful, wantonly and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of the ASR to consumers, including plaintiff, and the medical community.

52.     The representations were made by defendants with the intent that doctors and patients, including plaintiff, rely upon them.

53.     Defendants' representations were made with the intent of defrauding and deceiving plaintiff, other consumers and the medical community to induce and encourage the sale of the ASR.

54.     Plaintiff and her physician did in fact rely upon the representations.

55.     Defendants' fraudulent representations evinced callous, reckless, willful and depraved indifference to the health, safety and welfare of consumers including plaintiff.

56.     Plaintiff was injured as a direct and proximate result of defendants' actions, omissions and misrepresentations.

57.     Plaintiff has incurred and will continue to incur expenses as a result of using the ASR.

58.     Defendants acted with oppression, fraud and malice toward plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing defendants for their conduct in an amount sufficiently large to be an example to others and to deter these defendants and others from engaging in similar conduct in the future.

WHEREFORE, plaintiff Cynthia Curry demands judgment against defendants, jointly and severally, in an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV
### Cynthia Curry v. Defendants
### Fraudulent Concealment

59.     Plaintiff incorporates herein by reference all preceding paragraphs of this Complaint as though fully set forth at length.

60.    Defendants fraudulently concealed information with respect to the ASR in the following particulars:

a.    defendants represented through the labeling, advertising, marketing, materials, detail persons, seminar presentations, publications, notice letters and regulatory submission that the ASR was safe and fraudulently withheld and concealed information about the substantial risks of using the ASR; and

b.    defendants represented that the ASR was safer than other alternative medications and fraudulently concealed information which demonstrated that the ASR was not safer than alternatives available on the market.

61.    Defendants had sole access to material facts concerning the dangers and unreasonable risks of the ASR.

62.    The concealment of information by defendants about the risks of the ASR was intentional and the representations made by defendants were known by defendants to be false.

63.    The concealment of information and the misrepresentations about the ASR were made by defendants with the intent that doctors and patients, including plaintiff, rely upon them.

64.    Plaintiff and her physicians relied upon the representations and were unaware of the substantial risks of the ASR which defendants concealed from the public, including plaintiff and her physician.

65.    Plaintiff was injured as a direct and proximate result of defendants' actions, omissions and misrepresentations.  Plaintiff has incurred, and will continue to incur, expenses as a result of using the ASR.

66.    Defendants acted with oppression, fraud and malice toward plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing defendants for their

10

conduct in an amount sufficiently large to be an example to others, and to deter these defendants and others from engaging in similar conduct in the future.

WHEREFORE, plaintiff Cynthia Curry demands judgment against defendants, jointly and severally, in an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

COUNT V
Chris Curry v. Defendants
Loss of Consortium

67.    Plaintiff incorporates herein all preceding paragraphs of this Complaint as though fully set forth at length.

68.    As a result of the aforementioned injuries sustained by his wife, plaintiff Cynthia Curry, plaintiff Chris Curry has been and may in the future be deprived of the care, companionship, consortium, and society of his wife, all of which will be to his great detriment, and claim is made therefor.

WHEREFORE, plaintiff Chris Curry demands judgment against defendants, jointly and severally, in an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

_____
GERALD B. BALDINO, JR., ESQUIRE
Attorney for Plaintiff